742 So.2d 150 (1999)
Bobby PATTON a/k/a Bobby L. Patton, Jr., Appellant,
v.
STATE of Mississippi, Appellee.
No. 98-KA-00012-COA.
Court of Appeals of Mississippi.
May 4, 1999.
*151 Eric A. Tiebauer Jr., Waynesboro, Attorney for Appellant.
Office of the Attorney General by Michael C. Moore, Attorney for Appellee.
BEFORE McMILLIN, C.J., IRVING, AND PAYNE, JJ.
IRVING, J., for the Court:
¶ 1. Bobby Patton and Marcus Howard were charged by the Grand Jury of Wayne County in a single indictment with the crime of murder of Latoya Gandy, with Patton being charged as a habitual offender pursuant to Miss.Code Ann. § 99-19-83 (1972). They were tried together in the Circuit Court of Wayne County. Patton was convicted and sentenced to a term of life imprisonment without the possibility for parole. Aggrieved, Patton appeals his conviction and sentence to this Court. The statement of issues is recited verbatim from his brief:
I. The trial court committed reversible error when it refused to grant the defendant's requests [sic] for a directed verdict at the close of the State's case-inchief, as there was no evidence presented which when viewed in the light most favorable to the State of Mississippi would have allowed fair and reasonable minded jurors to conclude that Mr. Bobby Patton was guilty of murder beyond a reasonable doubt.
II. The trial court committed reversible error when it allowed the State to elicit from the defendant the fact that he had served time in prison. This was done even after the prosecution promised not to do so during argument on the defendant's motion in limine, thereby constituting prosecutorial misconduct.
III. The prosecution committed prosecutorial misconduct by discussing before the jury, during cross-examination of Mr. Bobby Patton, that he failed to call witnesses and the reasons therefore, when those same witnesses were equally available to the State. The trial judge committed reversible error by not observing that the defendants['s] constitutional rights to a fair trial and fair and impartial jury were violated by said conduct and by not claiming a mistrial.

FACTS
¶ 2. Patricia Davis testified that on October 31, 1996, she was present in Adrian Ramey's trailer house along with Marcus Howard, Bobby Patton, Latoya Gandy and Adrian Ramey. She stated that she and Howard had been dating for two or three months and that Gandy and Patton had had an intimate relationship in the past. Davis testified that they all began drinking when Howard and Patton arrived at Ramey's trailer around 9:30 or 10:00 p.m. She testified that Knucklehead, no formal name given, arrived after Howard and Patton. *152 Davis testified to the following sequence of events when Knucklehead entered the trailer: Knucklehead came in and gave his gang handshake to Howard; Gandy started singing a song about loving gangsters; Knucklehead cursed her out and Gandy, consequently, flashed her gang sign. Davis testified that an argument developed between Gandy and Howard when Gandy threw up the gang sign; the sign was an indication of disrespect toward Howard. Howard, Patton and Knucklehead are members of the Black Gangsters Disciples (BGD) and Gandy was a member of the Vice Lords.
¶ 3. Davis further testified that after the initial argument, a gun was drawn. Davis was confused as to who drew the gun first, but she stated that Patton put the gun to Gandy's head first, and then passed the gun to Howard. Howard then placed the gun at Davis' head and asked her if she was "true to the gang." At that point, no threats were made to either of the girls. Howard continued arguing with Gandy and then started hitting Gandy in the side of her back with the handle of the gun. The argument did not end until Howard and Patton left the trailer. Davis testified that as Patton and Howard were leaving, Gandy shouted, "I can't let this s___ ride, just like that." Davis stated that Ramey came to the front when she heard the commotion. Davis testified that while Gandy was in the back of the trailer, Howard threatened to kill her. Ramey also testified to hearing Howard state "that b____, I going to kill that b____." The only persons who heard the threat were Ramey, Davis and Patton. Davis stated that Patton went to the back of the trailer and told Gandy that they would take her home, wherein all three left together. Howard instructed Davis to tell anyone who asked about Gandy "that she left walking." All three left between 1:15 and 1:45 a.m., when Ramey sent them to the store to get cigarettes. Davis testified that Howard and Patton returned with the cigarettes around 2:45 a.m. When they came back, Patton was still dressed the same as he was when he left earlier, but Howard's shirt was off, also Gandy was not with them when they returned. Davis stated that Patton reiterated the instructions regarding Gandy and then left. Howard also threatened to kill both Davis and Ramey if anything was said about Gandy.
¶ 4. Patton, the appellant, testified that he had an ongoing intimate relationship with Gandy and that he and Gandy had sex the night Gandy was murdered. After Gandy and Patton had sex, Patton and Howard tried to switch partners. When Howard asked Gandy, she said no and they began to argue. Gang signs had not been flashed at that time. Patton also testified that Gandy did not leave with them when they left Ramey's trailer. Patton stated that they saw Gandy standing on the corner when they returned to the trailer with Ramey's cigarettes. When they left the trailer, Howard pulled up to the corner, wherein Howard apologized to Gandy. Patton testified that Howard told Gandy that the "s____ was dead" and offered her a ride out of the cold which she accepted. During the ride, they stopped on Landfill Road to relieve themselves. While Patton was relieving himself, his back was turned toward Howard. Patton heard Gandy say, "don't point that at my baby, you may hurt him." Patton stated that when Gandy asked Howard to stop playing with the gun, she threw her hands up, and that's when he heard the gun go off. When her body started jerking, he didn't wait to see if she was injured, he just ran into the woods which was off to the left side of the car.
¶ 5. Sheriff Marvin Farrior testified to receiving a call about 10:00 a.m. on November 1, 1996. He responded to a caller who found a body lying on the side of the road. The body was lying to the left of where the driver's side of a car would have been located. Farrior testified that family members led them to Ramey's trailer, where Gandy was last seen. Ramey and Davis led the Sheriff's Department to Patton *153 and Howard. Farrior further testified that they were able to match the treads from the crime scene to Howard's car. Farrior testified that the bumper still had dirt from where the car had hit the embankment at the crime scene. After interviewing Howard, Howard took the Sheriff to where the pistol was hidden. Farrior testified that a statement was taken from Howard after his arrest. In the statement Howard stated that:
"they had stopped, they were out of the car and that he pointed the gun up at her head. And she said, `get that gun out of my face,' and she bumped the gun and it went off."
The State, however, contradicted Howard's account with testimony from Dr. Steven Hayne, the senior pathologist at Rankin Medical Center. Hayne testified that the entrance of the gunshot wound indicated that the weapon was fired at a very close proximity to her left eye. It was his opinion that this range precluded self-inflicted wounds and accidents. Additionally, Ronald George, a friend of both Howard and Patton, testified that on the morning after the murder, Howard admitted to killing Gandy.

DISCUSSION

I. Patton's request for a directed verdict at the close of the State's case-in-chief
¶ 6. When Patton presented his defense after the prosecution's case-in-chief and after his motion for directed verdict was denied, he in effect waived his right to appeal. Weeks v. State, 493 So.2d 1280, 1282 (Miss.1986). At the conclusion of the entire case, Patton did not renew his request for directed verdict; he is procedurally barred from raising this issue here. Holland v. State, 656 So.2d 1192, 1196 (Miss.1995).

II. Testimony concerning Patton's prior convictions
¶ 7. Before the commencement of Patton's testimony, his trial counsel made a motion in limine to prevent the State from adducing testimony concerning Patton's prior convictions. After counsel requested the motion in limine, the trial judge did not make a ruling at that time. The trial judge postponed his decision until such time when the prior convictions became an issue. He further requested that counsel assert his objection at that time.
¶ 8. During the State's cross-examination of Patton, the following occurred:
Q: Well, on October 31, 1996, you [sic] a member of the Black Gangster Disciples?
A: No, I was not; and, no, I am not.
Q: When did you cease to become a member of the BGD?
A: September 27, 1995.
Q: What is significant about that date? Why did you notwhy did you become unaffiliated with them on that day?
A: I don't understand the question.
Q: Well, why did you part company with the Black Gangsters Disciples gang on that date?
A: Well, first of all, because I was incarcerated; second of all, because I have kids and I wanted to, once released from prison, I wanted to get out and raise my kids and not be tied up with any other ties.
¶ 9. Patton contends that the above colloquy amounts to the State's eliciting testimony from him concerning his prior convictions and incarcerations and that such constituted prosecutorial misconduct in light of his motion in limine. First of all, it is clear that Patton volunteered the information regarding his incarceration, and it could hardly be said that same was elicited by the prosecutor. Secondly, Patton's counsel did not assert any objection to the testimony, nor did he ever obtain a ruling on the motion, thus the issue was never tried or passed before the trial court. Patton is procedurally barred from asserting this issue on appeal because no contemporaneous objections were made. *154 See Oates v. State, 421 So.2d 1025, 1029 (Miss.1982). The purpose for requiring specific objections is to avoid costly new trials and to allow the offering party an opportunity to obviate the objection. Id. Additionally, the trial court cannot be put in error unless it has had an opportunity to pass on the question. Id. We can review only those issues that have been tried and passed upon by the trial court. Leverett v. State, 197 So.2d 889, 890 (Miss.1967). We find, therefore, that Patton did not properly preserve this issue for appeal.

III. Patton's claim that the prosecution committed misconduct by cross-examining him about his abandoned alibi
¶ 10. Patton contends that when the State cross-examined him, the prosecution elicited improper questions regarding witnesses Patton had listed to call at trial, but later decided not to call when he abandoned his alibi defense. Patton did not object to the prosecution's line of questioning and asserts this issue for the first time on appeal. Patton is procedurally barred from asserting this claim, and we, do not address the merits, if any, of this issue. See Mackbee v. State, 575 So.2d 16, 30 (Miss.1990).
¶ 11. We find no merit in the issues presented by Patton.
¶ 12. THE JUDGMENT OF THE CIRCUIT COURT OF WAYNE COUNTY OF CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT SUSPENSION, REDUCTION, PROBATION, PAROLE OR ANY OTHER TYPE OF EARLY RELEASE IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WAYNE COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, COLEMAN, DIAZ, LEE, PAYNE, AND THOMAS, JJ., CONCUR.