760 So.2d 48 (2000)
Geraldine ALFORD a/k/a Geraldine L. Alford, Appellant,
v.
STATE of Mississippi, Appellee.
No. 1998-KA-01418-COA.
Court of Appeals of Mississippi.
May 16, 2000.
*50 Thomas C. Levidiotis, Oxford, Attorney for Appellant.
Office of the Attorney General by Jean Smith Vaughan, Attorney for Appellee.
EN BANC.

MODIFIED OPINION ON MOTION FOR REHEARING
PAYNE, J., for the Court:

PROCEDURAL POSTURE AND ISSUES PRESENTED
¶ 1. The original opinion in this matter is withdrawn, and this opinion is substituted therefor. The motion for rehearing is denied. Geraldine Alford, after a trial by jury in the Calhoun County Circuit Court on change of venue to Union County, stands convicted of the murder of her husband, Anthony Alford. After unsuccessful post-trial motions, Alford perfected this appeal, citing four incidents of error in her proceedings below: 1) the trial court erred in overruling defense objections to testimony that Alford had previously planned and attempted to kill her husband; 2) the trial court erred by refusing to admit into evidence medical records which corroborated the defense's theory of the case; 3) the prosecutor improperly elicited hearsay testimony; and 4) the cumulative effect of all the errors denied Alford a fair trial.
¶ 2. After reviewing the full record and arguments of the parties, we find Alford's assignments hold no merit. Accordingly, we affirm the conviction and sentence in this case.

FACTS
¶ 3. On March 10, 1997, at approximately 6:20 a.m., Calhoun County Sheriff Billy Gore received a phone call from Geraldine Alford in which she reported that two men had broken into her home and injured her husband, Anthony Alford. Sheriff Gore responded to the call and arrived at the Alford home to find that Tony Alford had suffered a fatal gunshot wound. Mrs. Alford contended that she and her husband were sleeping when they were awakened by two intruders wearing masks. The intruders demanded money from the Alfords and a struggle ensued. Mrs. Alford claimed she then left the bedroom unaccompanied and retrieved some money which she kept hidden in her freezer. Her version of the events was unclear but at some point between retrieving the money and returning to the bedroom, Mrs. Alford heard a gunshot. According to Mrs. Alford, one of the intruders then attempted to sodomize her but was unsuccessful in his attempt. He then forced her outside and placed a bag over her head. After instructing Mrs. Alford to remain outside, the intruders fled.
¶ 4. At trial, the State presented evidence that Mrs. Alford had repeatedly discussed murdering her husband with Tammie *51 Jones, an employee at the convenience store owned by the Alfords. Her various plans included having Mr. Alford shot and striking him with a tire iron as he changed a tire. Mrs. Alford also substituted rat poison for Mr. Alford's medication and laced his apple cider with methamphetamine. The poison did not have the desired effect, as Mr. Alford complained only that "his stomach burned." As for the methamphetamine, Tammie Jones testified that Mrs. Alford informed her that its only effect was to keep Mr. Alford awake all night.
¶ 5. On March 10, 1997, Mrs. Alford gave her husband some sleep aids, namely the prescription drug Xanax, so that she could suffocate him while he slept. She was unsuccessful because Mr. Alford was "breathing through the pillow." Finally, Mrs. Alford phoned John Paul Vance, another convenience store employee, and requested his assistance. When Vance arrived, Mr. Alford was beginning to stir. Vance punched Mr. Alford who then managed to grab the handgun he had recently purchased. Vance grabbed the gun from Alford and shot him once through the cheek, killing him.
¶ 6. Geraldine Alford was indicted for murder. Following trial in the Calhoun County Circuit Court, the jury convicted her and sentenced her to life in the custody of the Mississippi Department of Corrections.

DISCUSSION

I. WHETHER THE TRIAL COURT ERRED IN OVERRULING ALFORD'S OBJECTIONS TO PRIOR BAD ACTS TESTIMONY OFFERED BY STATE WITNESS TAMMIE JONES
¶ 7. Alford contends that the trial court violated her due process rights by overruling her objections to Tammie Jones's testimony that Alford had previously plotted and attempted to murder Anthony Alford. Moreover, she claims that the prejudicial effect of Jones's testimony outweighed its probative value.
¶ 8. Jones testified that on several occasions Alford expressed her desire to have her husband killed and proposed various plans to effectuate that desire. One plan involved Jones hiding and waiting for Mr. Alford to arrive home from the casino. She would then shoot him and rob him, making it appear as if someone had followed him home from the casino. According to Jones, on yet another occasion, Alford proposed that she would pretend to have a flat tire. When Mr. Alford arrived to change the tire, she would strike him on the head with a tire iron. Jones also testified that she helped Alford place rat poison in Mr. Alford's medication. Also, Jones testified that Alford had taken some nitroglycerine tablets from her mother which she planned to give to Mr. Alford. Finally, according to Jones, Alford also purchased two "eight balls" of methamphetamine which she placed in a cup of hot apple cider and served to Mr. Alford. Apparently, Mr. Alford suffered from a heart condition which his wife hoped to worsen.
¶ 9. The only defense objection to this entire segment of testimony was immediately after Jones's testimony regarding the nitroglycerine and whether she was aware of any medical condition suffered by the decedent
By Counsel for Alford: I sat here and let it go on about as long as I can go, these outlying boundaries testimony. We're here on a specific case. We're talking about things as far away as trying to build her up to this final event. All of this is absolutely non-relevant. They're about things we're not here on, and I'm going to vehemently object to any more questions. I think I've been awfully patient and let the D.A. say what he wants to say; but Gore Springs, rat poison, all this other stuff have nothing to do with this case we're here on today; and I'm going to object.
By the Trial Court: Where are you going?

*52 Counsel for the State: Your honor, it's the state's argument that she intended to kill her husband; and it's to prove the intent of her actions.
By the Trial Court: All right, let's go. It's overruled. You can answer.
The trial court overruled the objection, finding implicitly that the prior plans testified to by Jones demonstrated Alford's intent to kill her husband. Jones then related Alford's plan to use the crystal methamphetamine as a tool in murdering the decedent.
¶ 10. Alford's objection to Jones's testimony about Alford's intent to murder her husband was not raised until Jones had testified extensively about Alford's previous attempts and plans to kill her husband. Thus, the objection was untimely. Well-settled is the rule that counsel must object contemporaneously when an objectionable statement is given during a witness's testimony so that the trial judge can correct any error with proper instructions to the jury. Shelton v. State, 445 So.2d 844, 846 (Miss.1984). Failure to raise a contemporaneous objection to evidence constitutes a waiver of the issue on appeal. Patton v. State, 742 So.2d 150, 153 (¶ 9) (Miss.Ct.App.1999); Gatlin v. State, 724 So.2d 359 (¶ 43) (Miss.1998).
¶ 11. Though waived and procedurally barred by Alford's failure to lodge a contemporaneous objection, we nonetheless address the merits of Alford's claim. The testimony by Jones, as the trial court found, was admissible as evidence of Alford's intent to murder her husband. Evidence of other bad acts committed by a defendant is not generally admissible as a part of the State's case-in-chief. Neal v. State, 451 So.2d 743, 758 (Miss.1984). M.R.E. 404(b) provides "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent...."
¶ 12. If prior bad acts evidence falls within a 404(b) exception, its prejudicial effect must still be weighed against its probative value to determine admissibility under M.R.E. 403. Underwood v. State, 708 So.2d 18, 32 (Miss.1998). Alford argues that the trial court failed to conduct the balancing test. The Mississippi Supreme Court has required that when evidence is offered under M.R.E. 404(b) and there is an objection which is overruled, the objection is deemed an invocation of the right to a balancing analysis under Rule 403 and a limiting instruction. Robinson v. State, 735 So.2d 208, 210 (Miss. 1999). We reiterate, Alford's objection was lodged at the time Jones testified that Alford planned to give the decedent nitroglycerine, and whether Jones knew if the decedent suffered from a heart condition. Again, this was after Jones testified about many other attempts and plans by Alford to murder the decedent. Alford contends that the timing of the objection is not pertinent because the trial judge implicitly found that the prejudicial effect of Jones's testimony outweighed its probative value when he remarked "I don't know where we're going. We've been here for about an hour, and I haven't heard anything that's probative to this case, and she is bound and determined." This statement by the trial court came during a bench conference following a defense objection to Jones's testimony about speaking with Al Mullins, a law enforcement officer, on the morning of the murder. This was sometime after the initial objection lodged by Alford. However, Alford argues this remark constitutes a finding by the trial court that Jones's entire testimony failed the Rule 403 test. We disagree. The trial judge's comment above, when isolated and taken out of context, supports, at least marginally, Alford's position. But, the same comment, when read in context, indicates the trial court's statement was one more of frustration with the witness, Jones, than a comment on the probativeness of Jones's testimony:
By Counsel for Alford: Your Honor.

*53 By the Trial Court: Let me see counsel at the bench.
By Counsel for the State: Yes, sir, judge.
(bench conference)
By the Trial Court: I don't know where we're going. We've been doing this for about an hour, and I haven't heard anything that's probative to this case, and she [Jones] is bound and determined. I'm going to hold her in contempt here in a minute.
By Counsel for the State: She [Jones] doesn't understand the rules.
By the Court: She better understand them. You better teach them to her. Where are we going? We've been over and over the same thing. Where are we going?
By Counsel for the State: I mean it goes on even to intimidation of her [Jones] by the defendant with what the defendant told her.
By the Court: Let's get on with what the defendant's said.
(emphasis added). The trial court overruled both of Alford's objections and allowed Jones to continue testifying. The legitimate concern raised by Alford regarding the trial court's comment about the probative nature of Jones's testimony, we believe, disappears when the comment is read in the context from which it was taken. The trial court implicitly found the testimony of Jones to be probative of Alford's intent. We find no error in the admission of Jones's testimony.
¶ 13. Alford also contends that the trial court erred in failing to sustain her objections to Jones's testimony that after the murder Alford "always would ask if I was wearing a wire." Though there is a break in the proceedings after this testimony by Jones, the record does not reflect the reason for the break. Alford failed to lodge a contemporaneous objection to the testimony regarding Alford's concern with Jones's wearing a wire. Failure to raise a contemporaneous objection to evidence constitutes a waiver of the issue on appeal. Patton v. State, 742 So.2d 150, 153 (¶ 9) (Miss.Ct.App.1999); Gatlin v. State, 724 So.2d 359 (¶ 43) (Miss.1998).
¶ 14. Alford also complains that error occurred when Jones testified that Alford was intoxicated after the murder to the point that Alford was unable to sit on a restaurant toilet without falling off. This testimony was in relation to a broader relation by Jones of Alford's alleged statement that "I'm going to get away with it. I'm going to get away with it.", a reference to the murder of the decedent. Once again, Alford failed to lodge a contemporaneous objection to the testimony in this regard. Failure to raise a contemporaneous objection to evidence constitutes a waiver of the issue on appeal. Patton v. State, 742 So.2d 150 (¶ 9) (Miss.Ct.App. 1999); Gatlin v. State, 724 So.2d 359 (¶ 43) (Miss.1998).
¶ 15. Finally, Alford contemporaneously objected to Jones's testimony regarding Alford's statement that she engaged in sexual relations with Wendell Blount in order to prevent him from having his "hit man" kill Jones. Blount was an individual with whom Alford and Jones, by Alford's admission, traveled to Louisiana with after the murder. The trial court found that it was proof of Alford's intent to cover up the crime and possibly prevent Jones from testifying. "A trial judge is allowed considerable discretion as to the relevancy and admissibility of evidence and, unless his judicial discretion is abused, this Court will not reverse his ruling." Edwards v. State, 737 So.2d 275 (¶ 49) (Miss.1999). We find no abuse of discretion by the trial court in admitting this testimony and accordingly find no error.

II. WHETHER THE TRIAL COURT ERRED BY REFUSING TO ADMIT ALFORD'S MEDICAL RECORDS INTO EVIDENCE
¶ 16. Alford attempted to introduce into evidence the medical records of *54 Drs. Lee Horn and Blake Smith. The State's objection to the records was sustained; however, the trial court ruled that the doctors could use the records to refresh their memories. Alford claims that the medical records were crucial to her defense in that they tended to corroborate her account of the facts, that is, that she was assaulted by two individuals who had "invaded her home and murdered her husband."
¶ 17. Dr. Horn examined Alford on March 10, the day of the murder. He noted that there were some minor abrasions on Alford's chest consistent with scratches made by a human hand. He further noted a minor bruise to the top of Alford's right hand. Dr. Horn's impression was that Alford was suffering from a grief reaction due to the death of her husband and that she sustained minor injuries secondary to the alleged altercation. On cross-examination, Dr. Horn admitted that Alford did not complain of a sexual assault.
¶ 18. Alford was examined by Dr. Smith on March 13, three days after the murder. Dr. Smith noted a bruise on Alford's forehead, a bruise on her hand, and a bruise on her buttocks. He also observed a scratch on Alford's chest and several small scratches on the inner fold of Alford's buttocks. Dr. Smith found that Alford's rectum was very tender and that she was unable to tighten her rectal muscles. Dr. Smith further noted that Alford suffered from hemorrhoids. Dr. Smith's impression was a grief reaction, external hemorrhoids and an alleged sexual assault. Dr. Smith testified that lack of rectal muscle tone is consistent with Alford's account of attempted sodomy. However, he explained that hemorrhoids can also account for the lack of rectal tone.
¶ 19. "A trial judge enjoys a great deal of discretion as to the relevancy and admissibility of evidence. Unless the judge abuses this discretion so as to be prejudicial to the accused, the Court will not reverse this ruling." Hughes v. State, 735 So.2d 238 (¶ 134) (Miss.1999).
¶ 20. The record reveals that Alford apparently attempted to have the records admitted into evidence under the business record exception to the hearsay rule. While the medical records may have tended to corroborate Alford's defense theory, we cannot say that the trial judge's failure to admit them into evidence constitutes an abuse of discretion which substantially prejudiced Alford. The supreme court has held that failure to admit a record into evidence under the business record exception to hearsay constitutes harmless error where the preparer of the record testifies as to its contents. Weeks v. State, 493 So.2d 1280, 1284-85 (Miss.1986). Both physicians testified extensively about Alford's injuries and the nature of the medical treatment she received following the murder. We therefore find that failure to admit the medical records into evidence was not reversible error.

III. WHETHER PROSECUTORIAL MISCONDUCT DEPRIVED ALFORD OF A FAIR TRIAL
¶ 21. Alford claims that the prosecutor improperly elicited hearsay testimony from Tammie Jones. Alford poses the question: "Does a trial lawyer not know when he has called for an answer which is going to require speculation from a witness, is likely to elicit a hearsay answer, or that is simply not relevant to the matter before the court?"
¶ 22. There are three specific areas Alford cites in support of her claim. First, she points out several examples in the record of responses by Jones which contained hearsay. However, Alford failed to object to all but one of these responses. The failure to make a contemporaneous objection waives the right of raising the issue on appeal. Ballenger v. State, 667 So.2d 1242, 1259 (Miss.1995). The sole objection raised by Alford was overruled by the trial court.
*55 ¶ 23. Second, Alford notes Jones's apparent inability to understand the rule against hearsay. She explains that the portion of Jones's testimony dealing with statements made by John Paul Vance contained no less than six sustained hearsay objections. This culminated in the trial judge informing the prosecutor to "ask your questions in a way that the witness doesn't have to testify into hearsay." Jones continued to lapse into hearsay during her testimony, prompting the prosecutor to remark "She doesn't understand the rules." The trial judge responded "She better understand them. You better teach them to her."
¶ 24. After reviewing all of the testimony about which Alford complains, we do not find that the prosecutor improperly elicited any hearsay that caused Alford to suffer prejudice. The trial judge admonished the jury to disregard the testimony on all but two of the occasion cited by Alford. Where a trial judge sustains an objection to testimony interposed by the defense in a criminal case and instructs the jury to disregard it, the remedial acts of the court are usually deemed sufficient to remove any prejudicial effect from the minds of the jurors. The jury is presumed to have followed the directions of the trial judge. Walker v. State, 671 So.2d 581, 621 (Miss.1995). We similarly decline to find that the prosecutor acted improperly because there were sixteen sustained defense objections to the testimony of John Paul Vance.
¶ 25. Finally, Alford alleges that the following comment by the prosecutor was improper: "Tammie, I know you don't understand these rules of court. Most lawyers don't." According to Alford, the message for the jury was clear"don't be bothered by mere technicalities that most lawyers don't understand." Once again, Alford failed to object to this remark; thus, it is now waived, and we decline to address this issue.

IV. WHETHER CUMULATIVE ERROR REQUIRES REVERSAL
¶ 26. Alford argues that even if her assignments of error do not individually constitute reversible error, the combined effect of all of the errors warrants reversal by this Court. "When the combination of specific errors, while harmless in each instance, accrued to such an extent that a defendant was denied a fair trial, this Court will reverse for cumulative error." Hughes v. State, 735 So.2d 238 (¶ 199) (Miss.1999). Of course, that is assuming that we find any of her assignments of error sufficiently meritorious to be classified as even harmless error. In the case sub judice, "there was no reversible error in any part, so there is no reversible error to the whole." McFee v. State, 511 So.2d 130, 136 (Miss.1987). Therefore, this assignment of error is moot as we have found no sufficiently meritorious claim raised by Alford to be classified as even harmless error.
¶ 27. THE JUDGMENT CIRCUIT COURT ON CHANGE OF CIRCUIT COURT OF CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO CALHOUN COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, IRVING, LEE, MOORE, AND THOMAS, JJ., CONCUR.