MYERS, J.,
for the Court.
¶ 1. This appeal arises from the decision of the Adams County Circuit Court, finding James Lynnwood Bergeron guilty of manslaughter and sentencing him to a term of twenty years in the custody of the Mississippi Department of Corrections. The sentence imposed by the Adams County Circuit Court is to run consecutively to an eight year sentence imposed by the same court for Bergeron’s guilty plea for possession of a stolen motor vehicle and possession of a deadly weapon by a previously convicted felon.
¶ 2. Aggrieved by the decision of the circuit court, Bergeron appeals raising the following three issues:
I. WHETHER THERE WAS ADEQUATE EVIDENCE SUPPORTING THE TRIAL COURT’S DENIAL OF BERGERON’S MOTION FOR DIRECTED VERDICT BASED UPON THE WEATHERSBY RULE?
II. WHETHER THE EVIDENCE OF FLIGHT WAS ERRONEOUSLY INTRODUCED?
*999 III. WHETHER THE JURY’S VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?
¶ 3. Finding no error, we affirm.
STATEMENT OF FACTS
¶ 4. On Friday, March 8, 2002, Bergeron was working in Baton Rouge, Louisiana and commuting from his residence in Adams County, Mississippi, where he lived with his girlfriend, Sue Arm Harper. Ber-geron and Harper met in Metairie, Louisiana and had been dating for approximately one year prior to Harper’s death.
¶ 5. On March 8, 2002, Harper asked Bergeron if he would purchase some illegal drugs in Baton Rouge before coming back to Adams County. When Bergeron arrived home without the drugs, he and Harper began driving to known drug locales, in an attempt to purchase drugs. Bergeron and Harper were eventually able to acquire some drugs from their apartment’s maintenance man who later agreed to purchase further drugs for Harper and Bergeron that evening. When it became obvious that further drugs, would not be arriving at their apartment that evening, Bergeron and Harper placed their 12-gauge sawed-off shotgun in the cab of their pickup and drove to some dangerous neighborhoods in pursuit of additional drugs.
¶ 6. Bergeron testified that as he and Harper drove around trying to -purchase drugs, Harper was becoming angry because she was continuing to get “ripped off’ and began talking of committing suicide. Bergeron further testified that Harper then picked up the shotgun and began waiving it around in the truck erratically, while he attempted in vain to convince her to put the gun down. Bergeron testified that Harper then shot herself; so, he drove to her mother’s house to seek aid. Bergeron testified that he did not take Harper directly to the hospital because the pair were driving a stolen pickup truck and, as a prior convicted felon, it would be a violation of. state and federal law for him to possess any firearm. Upon arriving at Harper’s mother’s home, Harper’s mother took Harper to the hospital where Harper died shortly thereafter.
¶ 7. Bergeron was subsequently indicted for Harper’s murder, for possession of a stolen motor vehicle, and for possession of a deadly weapon by a previously convicted felon. Bergeron pled guilty to counts two and three in the indictment, relating to possession of stolen property and possession of a weapon by a convicted felon and was sentenced to eight years imprisonment for those crimes. At trial for the murder of Harper, Bergeron was found guilty of manslaughter and sentenced to a twenty year term to run consecutively to the eight year sentence received under counts two and three of the indictment.
LEGAL ANALYSIS
I. WHETHER THERE WAS ADEQUATE EVIDENCE SUPPORTING THE TRIAL COURT’S DENIAL OF BERGERON’S MOTION FOR DIRECTED VERDICT BASED UPON THE WEATHERSBY RULE?
¶ 8. Bergeron first argues that the trial court manifestly erred by denying his motion for directed verdict, in accordance with the Weathersby rule. Weathersby v. State, 165 Miss. 207, 209, 147 So. 481, 482 (1933).
STANDARD OF REVIEW
¶ 9. - Our standard of. review states that all evidence supporting a guilty verdict is accepted as true, and the prosecution must be given the benefit of all reasonable inferences that can be reasonably *1000 drawn from the evidence. McClain v. State, 625 So.2d 774, 778 (Miss.1993). Additionally, this Court is not at liberty to direct that the defendant be found not guilty unless, viewing the evidence in the light most favorable to the verdict, no reasonable, hypothetical juror could find beyond a reasonable doubt that the defendant was guilty. Conners v. State, 822 So.2d 290, 293(¶ 6) (Miss.2001).
DISCUSSION
¶ 10. Bergeron’s first assignment of error is that the trial court erred by not granting his motion for a directed verdict. Bergeron argues that the Weathersby rule applies to his case and as such, the trial court’s granting of his motion for directed verdict is required. The Weathersby rule states “that where the defendant or the defendant’s witnesses are the only eyewitnesses to the homicide, their version, if reasonable, must be accepted as true, unless substantially contradicted in material particulars by a credible witness or witnesses for the state or by the physical facts or by the facts of common knowledge.” Weathersby, 165 Miss. at 209, 147 So.2d. at 481. Bergeron maintains that Harper was not the victim of a homicide but rather committed suicide and argues that, as the only eyewitness to Harper’s suicide, the trial court must accept as true his version of the events, in accordance with Weathersby.
¶ 11. Upon review of the record, we find Bergeron’s argument lacks merit. The Weathersby rule states “that where the defendant or the defendant’s witnesses are the only eyewitnesses to the homicide, their version, if reasonable, must be accepted as true, unless substantially contradicted in material particulars by a credible witness or witnesses for the state or by the physical facts or by the facts of common knowledge.” Id. (emphasis added). During the State’s case-in-chief, the State presented the testimony of Bergeron’s former neighbor, Nathaniel Brown, who stated that Bergeron had previously caused a disturbance at Brown’s apartment when he made threats toward Harper stating that “he would use this on her,” referring to the sawed-off shotgun he was carrying, the same sawed-off shotgun which ultimately killed Harper.
¶ 12. Further, the State introduced testimony from David Whitehead from the Mississippi Crime Lab in Jackson, Mississippi, stating that the results from a “gunshot residue kit,” a process whereby samples are taken from an individual’s hands using adhesive strips to test for the presence of gunshot primer, showed no evidence of gunshot primer on Harper’s hands, indicating that Harper did not fire the weapon used in her death.
¶ 13. Since Bergeron’s recollection of the event was “substantially contradict-' ed in material particulars by a credible witness or witnesses for the state or by the physical facts or by the facts of common knowledge,” the Weathersby rule does not apply. Id. Rather, the difference in the testimony presented an issue for the jury’s determination. It is well-settled law in Mississippi that issues of credibility and the weight assigned to the testimony presented are determinations which are made by the jury. Jackson v. Griffin, 390 So.2d 287, 289 (Miss.1980). The jury made this determination and found the evidence presented by the State was due greater weight than the testimony of Bergeron. As has been previously stated by the Mississippi Supreme Court, the authority to interfere with a jury verdict is quite limited.' McFee v. State, 511 So.2d 130, 133 (Miss.1987). The procedure to be followed by a reviewing court was stated in McFee as follows:
*1001 We proceed by considering all of the evidence — -not just that supporting the case for the prosecution — in the light most consistent with the verdict. We give prosecution the benefit of all favorable inferences that may reasonably be drawn from the evidence. If the facts and inferences so considered point in favor of the accused with sufficient force that reasonable, men could not have found beyond a reasonable doubt that he was guilty, reversal and discharge are required. On the other hand, if there is in the, record substantial evidence of such quality and weight that, having in mind the beyond a reasonable, doubt burden of proof standard, reasonable and fair-minded jurors in the exercise of impartial judgment might have reached different conclusions, the verdict of guilty is thus placed beyond our authority to disturb.
McFee, 511 So.2d at 133-34.
¶ 14. Based on our review of the record, we find that the jury’s verdict was one which reasonable and fair-minded jurors could reach, and therefore we find that this issue is without merit.
II. WHETHER THE EVIDENCE OF FLIGHT WAS ERRONEOUSLY INTRODUCED?
STANDARD OF REVIEW
“The standard of review regarding admission of evidence is abuse" of discretion. Where error involves the admission or exclusion of evidence, this Court will not reverse unless the error adversely affects a substantial right of a party.” Floyd v. City of Crystal Springs, 749 So.2d 110, 113(¶ 12) (Miss.1999).
.DISCUSSION
¶ 15. Prior to trial, from Ber-geron’s motion in limine, the trial court issued a ruling which prohibited the presentation of any evidence regarding Bergeron’s flight to Louisiana. Yet, in spite of. this ruling, Bergeron’s trial counsel, as a component of their trial strategy, discussed Bergeron’s flight to the jury during ■ opening statements. The trial court then issued a ruling, outside of the presence of the jury, allowing the State to use this formerly excluded evidence, as part of its case-in-chief. The trial court’s ruling is as follows:
THE COURT: Let the record show that the Court conducted certain preliminary matters prior to the start of this trial, and the jury has now been excused. One of which was a motion of the defense to prohibit evidence of flight in this case.
The law is well settled that evidence of flight is not permissible where there is another • explanation for the defendant’s flight. One of the primary cases in the State of Mississippi is where an escapee from the Mississippi State Penitentiary is charged with a murder, and the State was not allowed to present — or the Court ruled he should not have presented evidence of flight, because there was another explanation that he escaped from the penitentiary.
The reason for this law is very clear that it puts the defendant in an awkward position of having to explain what he was doing and bringing out evidence of another crime. • The Court, when presented with this by the defense, the evidence was that it was in a stolen vehicle, and that was the explanation, the Court sustained this ruling and had prohibited the State from going into that and on the opening statement.
From the defense’s opening statement, apparently the defendant has chosen to go into that himself and has interjected this; therefore, the Court will *1002 rescind its previous ruling, and the State will be allowed to proceed with full evidence of flight, and I will make proper rulings on the law at that time. But for the reason that the record will reflect, that the defendant on the opening statement has interjected this himself, the evidence of the stolen vehicle, then there’s no reason at this point to prohibit the State from going into this; and therefore, because of that, the Court will rescind its previous ruling prohibiting the State from going into any evidence of flight in this case.
All right, we’re going to proceed, and we’ll start at 1:15.
MR. COLBERT: Judge, I need to put on the record my objection to the Court’s ruling. It was my understanding that the Court has already made that ruling and didn’t admonish me in any way not to mention that.
THE COURT: Mr. Colbert, you have injected that before the jury; you’ve talked about him; you’ve presented that himself about him being in a stolen vehicle, being up here in a stolen vehicle; that completely removed any reason for the State not going into it, and I will rule on that. But you have clearly injected that yourself, which I have — you know, you can’t have your cake and eat it too on that.
¶ 16. Bergeron argues that the case of Austin v. State, 784 So.2d 186 (Miss.2001), is controlling. Austin held that a “flight instruction should only be given in cases where the defendant’s flight (1) is unexplained and (2) where the circumstance of that flight has considerable probative value.” Id. at 194(¶ 24). While the Austin decision further held that the two-part test must be met in order to introduce evidence of flight, even when a flight instruction has not been requested, the decision does not state that the two-part test must be met when the opponent of the evidence introduces it on his own volition. Id. at 194 (¶¶ 24-25).
¶ 17. The Mississippi Supreme Court has previously held that the defendant may “open the door” by mentioning during opening statements the evidence which they are seeking to be excluded from the prosecution’s case-in-chief, thus giving the prosecution the opportunity to incorporate the evidence into its case-in-chief. Florence v. State, 755 So.2d 1065, 1071(1117) (Miss.2000). Finding that Bergeron opened the door by the introduction of this previously excluded evidence, this issue is without merit.
III. WHETHER THE JURY’S VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?
STANDARD OF REVIEW
¶ 18. This Court will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial. A new trial will not be ordered unless the jury’s verdict is so contrary to the overwhelming weight of the evidence, that to allow it to stand would sanction an unconscionable injustice. Todd v. State, 806 So.2d 1086, 1090(¶ 11) (Miss.2001).
DISCUSSION
¶ 19. Bergeron contends that the verdict is against the overwhelming weight of the evidence because it was impossible for reasonable and fair-minded jurors to determine that Bergeron was guilty of manslaughter. Rather, Bergeron contends, the only verdict which could be reached by reasonable and fair-minded jurors was that Harper committed suicide. This Court disagrees and finds Bergeron’s assignment of error to be without merit. The testimony presented at trial showed that Berger-on made threats to Harper previously, in *1003 which he stated he would kill her. Further, the Mississippi Crime Lab did not detect the presence of gunshot residue on Harper’s hands after her alleged suicide.
¶ 20. Factual disputes are resolved by a jury and do not require a new trial. McNeal v. State, 617 So.2d 999, 1009 (Miss.1993). The evidence presented at trial required the jury to make a determination as to the weight and credibility to assign each side and use their determination to reach a verdict. Holmes v. State, 481 So.2d 319, 322 (Miss.1985). As this determination is within the province of the jury and the verdict reached is not contrary to the overwhelming evidence in this case, we will not disturb that determination. Therefore, we find this issue to be without merit.
¶ 21. THE JUDGMENT OF THE CIRCUIT COURT OF ADAMS COUNTY OF CONVICTION OF MANSLAUGHTER AND SENTENCE OF TWENTY YEARS, AS AN HABITUAL OFFENDER, WITH SENTENCE TO RUN CONSECUTIVELY TO THE SENTENCES PREVIOUSLY IMPOSED, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., BRIDGES AND LEE, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ. CONCUR.