BARNES, J.,
for the Court:
¶ 1. James Lynwood Bergeron appeals the Adams County Circuit Court’s denial of his motion for post-conviction relief, claiming that he was erroneously sentenced as a habitual offender. Upon review, we find that the record does not support Bergeron’s status as a habitual offender. We reverse the circuit court’s denial of the motion and remand this case for re-sentencing.
SUMMARY OF FACTS AND PROCEDURAL HISTORY
¶ 2. On June 17, 2002, Bergeron was indicted on three counts: murder, possession of a stolen motor vehicle, and possession of a deadly weapon as a convicted felon. The indictment noted that Berger-on was a habitual offender under Mississippi Code Annotated section 99-19-81 *214 (Rev.2000). Bergeron’s habitual-offender status was based upon two 1993 convictions from Georgia — burglary and theft by taking. These convictions were brought in a single indictment, and both crimes were committed in the same evening when Ber-geron broke into a car dealership, stole the keys to a vehicle, and moments later, drove the vehicle off the premises.
¶ 3. Bergeron pleaded guilty in Adams County to the charges of possession of a weapon and stolen property and was sentenced to three years and five years, respectively, with the sentences to run consecutively without reduction, suspension, or probation. In a jury trial held on November 15, 2002, Bergeron was convicted of the lesser offense of manslaughter. He was given the maximum sentence of twenty years based on his classification as a habitual offender. This sentence was ordered to run consecutively to the eight years resulting from his guilty-plea sentences.
¶ 4. On direct appeal, this Court upheld Bergeron’s conviction. See Bergeron v. State, 913 So.2d 997 (Miss.Ct.App.2005). However, on January 28, 2009, the Mississippi Supreme Court partially granted Bergeron’s application for leave to seek post-conviction relief on the sole issue of his classification as a habitual offender. Following a hearing, the Adams County Circuit Court denied Bergeron’s motion for post-conviction relief, and Bergeron now appeals.
STANDARD OF REVIEW
¶ 5. A denial of a motion for post-conviction relief will not be disturbed on appeal unless the circuit court’s “findings are clearly erroneous.” Rowland v. State, 42 So.3d 503, 506 (¶ 8) (Miss.2010) (citing Moore v. State, 986 So.2d 928, 932 (¶ 13) (Miss.2008)). “However, where questions of law are raised!,] the applicable standard of review is de novo.” Id.
Whether the circuit court erred in finding that Bergeron was a habitual offender under Mississippi Code Annotated section 99-19-81.
¶ 6. Bergeron asserts that the circuit court erred in sentencing him as a habitual offender under Mississippi Code Annotated section 99-19-81, which states:
Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, shall be sentenced to the maximum term of imprisonment prescribed for such felony, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.
(Emphasis added). Bergeron claims that his two Georgia convictions were not separately brought and did not arise “out of separate incidents and different times.” Both charges were brought in a single indictment. Both convictions arose from a series of acts committed by Bergeron on December 13, 1993, when he broke into a car dealership, stole a set of keys, and used the keys to take an automobile from the lot. Bergeron stole the keys solely to obtain the vehicle, and these actions happened within minutes of one another.
¶ 7. We first address the State’s contention that this issue is barred by res judicata because the issue should have been raised on direct appeal. While it is true that issues which should have been raised at trial or on direct appeal will not be considered in post-conviction-relief pro *215 ceedings, those errors which concern fundamental rights are the exception to this rule. Rowland, 42 So.3d at 506 (¶ 10). Furthermore, this Court has stated that “[t]he right to be free from an illegal sentence is a fundamental constitutional right; therefore, a claim of illegal sentence cannot be procedurally barred under the Mississippi Uniform Post-Conviction Collateral Relief Act.” Williams v. State, 24 So.3d 360, 364 (¶ 10) (Miss.Ct.App.2009). Therefore, we do not find Bergeron’s claim to be barred from appellate review.
¶ 8. The Mississippi Supreme Court has held that “[a] prior offense may be considered under the statute even if [it] occurred on the same day as the instant offense as long as the two charges arose from ‘separate incidents.’ ” Buckley v. State, 511 So.2d 1354, 1359 (Miss.1987) (citing Crawley v. State, 423 So.2d 128, 129 (Miss.1982)). This issue was thoroughly discussed in Pittman v. State, 570 So.2d 1205 (Miss.1990), a case that the Adams County Circuit Judge found to be analogous to Bergeron’s Georgia convictions. In Pittman, the defendant was convicted of burglarizing a store. He was sentenced as a habitual offender as he had two prior convictions: burglary of Dotson Elementary School and grand larceny from Wilson Elementary School. These charges arose from events that occurred on the same night, and both schools were in close proximity as they were connected to one another by a common walkway and enclosed by a single, all-inclusive fence. The supreme court found that the convictions were separate incidents and upheld the defendant’s sentence as a habitual offender. Id. at 1207.
¶ 9. In its analysis, the Pittman court provided guidance for determining whether incidents could be considered separate:
[B]efore such behavior should be labeled habitual, it would seem that the events should be sufficiently separate that the offender’s criminal passions may have cooled so that he has time to reflect, and if after such an interval the individual forms and actualizes a new criminal design, and then does so a third time, he should be met with all of the power of the public force. Conversely, two offenses committed in rapid succession do not suggest the same repetitiveness of criminal design such that the offender may be thought predictably habitual thereafter, or deserving of severe sanction.
Pittman, 570 So.2d at 1206 (emphasis added). However, Bergeron asserts that his case is actually more analogous to the following hypothetical situation posed by the Pittman court:
No doubt, if [Bobbie Lee] Pittman broke and entered one room in the Wilson Elementary School and, finding nothing of value, then moved to another room in the same school and thereafter stole the three television sets from that room, we would consider the union of these acts sufficient that they would constitute but a lone incident under the statute. The record before us, however, reflects that the Dotson Elementary School and the Wilson Elementary School are separate schools, notwithstanding their proximity and common use of the auditorium and cafeteria.
Id. at 1207.
¶ 10. Bergeron further contends that his case more closely resembles the situation in Riddle v. State, 413 So.2d 737 (Miss.1982). Roy Lee Riddle was indicted and convicted of burglary, kidnapping, and rape of a child and sentenced using two of the predicated offenses to support his status as a habitual offender. All three offenses occurred in the same evening. The supreme court found that Riddle had burglarized the house and kidnapped the child *216 to achieve his purpose of committing the rape. Thus, “the only previous crimes shown to have been committed by Riddle were crimes which arose out of a single incident[,]” a fact that the State acknowledged. Id. at 738. Bergeron claims that, just as Riddle had one goal — to commit rape, his Georgia actions had but one goal: to steal a car. As the Pittman court noted in its discussion of Riddle: “Though subject to separate prosecution, the Riddle offenses arose out of a common temporal nucleus of operative fact and did not qualify as ‘separate incidents at different times.’ ” Pittman, 570 So.2d at 1206 (citing Riddle, 413 So.2d at 738) (emphasis added); see also Walls v. State, 759 So.2d 483, 489 (¶ 19) (Miss.Ct.App.2000) (finding that defendant’s two predicate offenses of assault, “for habitual offender status, arose out of a single incident or a common temporal nucleus of operative fact and [did] not qualify as separate incidents at different times”). This Court has reiterated this point, stating:
It is understandable why two crimes originating out of the same nucleus of operative facts should be counted as one crime for evaluating whether one should receive an enhanced penalty for his continual involvement in criminal activity. If the purpose of the statute is to deter subsequent criminal activity, it would be patently unfair to count multiple crimes — arising out of a common nucleus of operative facts and committed at the same time by an individual during one foray into criminal activity — as separate crimes because neither of the multiple crimes constitutes subsequent involvement in criminal activity. Such an interpretation is consistent with the laudable purpose of the statute: to stiffen the penalty for repeat offenders, not for current offenders who commit several crimes during their one foray into criminal activity.
Otis v. State, 853 So.2d 856, 862 (¶ 16) (Miss.Ct.App.2003).
¶ 11. We find Bergeron’s analysis to be well-reasoned. Bergeron broke into the car dealer’s office, stole a set of keys, and used the keys to take the car from the dealer. There was only one victim and one intent, to steal a car. In comparison, in Garrison v. State, 950 So.2d 990, 995 (¶ 19) (Miss.2006), the Mississippi Supreme Court found that the defendant’s prior convictions constituted two separate felonies as there were “two separate victims and two types of criminal intent.” See also Davis v. State, 850 So.2d 176, 179-80 (¶¶ 13-15) (Miss.Ct.App.2003) (finding that the defendant’s convictions, although committed in a series of events, were separate incidents as they involved two different victims and the second crime occurred at “some point later in time and location ha[d] nothing to do with the [first] case”). Thus, we find that Bergeron’s two 1993 Georgia convictions — burglary and theft by taking — arose from the same incident. As such, they cannot alone support his habitual-offender status.
¶ 12. Although the State claims that Bergeron agreed at his guilty-plea hearing that his two 1993 convictions satisfied the requirements of section 99-19-81, the transcript of this hearing is not contained in the record. The only semblance of any agreement in the record occurred at Ber-geron’s sentencing hearing for his manslaughter conviction when the circuit judge inquired if Bergeron had “anything concerning the habitual offender status.” Bergeron’s counsel answered, “No, your Honor.” We find this to be insufficient to support any overt consent by Bergeron as to his status as a habitual offender.
¶ 13. The State also argues that, even if the two Georgia convictions could not be counted separately, the two felonies *217 for which Bergeron pleaded guilty immediately prior to trial would support his status as a habitual offender. However, as section 99-19-81 states, the convictions supporting the habitual-offender classification must be brought separately and arise “out of separate incidents at different times.” The record reflects that the two guilty pleas — possession of a firearm by a convicted felon and possession of a stolen motor vehicle — arose out of the same incident that resulted in Bergeron’s manslaughter conviction. The circuit judge correctly stated that he would not consider these convictions for the purposes of Ber-geron’s habitual-offender status.
¶ 14. Finding that the record does not support Bergeron’s status as a habitual offender, we reverse the judgment of the circuit court and remand this case for re-sentencing.
¶ 15. THE JUDGMENT OF THE CIRCUIT COURT OF ADAMS COUNTY DISMISSING THE MOTION FOR POST-CONVICTION RELIEF IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO ADAMS COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., MYERS, ISHEE, CARLTON AND MAXWELL, JJ., CONCUR. ROBERTS, J., CONCURS IN PART AND IN THE RESULT.