CARLTON, J.,
for the Court:
¶ 1. A jury found Vance Drummer guilty of two counts of grand larceny and one count of attempted grand larceny. Drummer now appeals the Lowndes County Circuit Court’s final judgment against him and the denial of his motion for a judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial. On appeal, Drummer raises the following issues: (1) whether the circuit court judge erred by giving a flight instruction to the jury; (2) whether Drummer was prejudiced by a discovery violation; (3) whether the evidence was sufficient to support Drummer’s conviction for attempted grand larceny; (4) whether the guilty verdict for attempted grand larceny was contrary to the weight of the evidence; and (5) whether the circuit court judge properly sentenced Drummer as a habitual offender. Finding no error, we affirm.
FACTS
¶ 2. While finishing his patrol around 3:55 a.m. on January 2, 2009, Officer Happ Anderson witnessed a vehicle run through a four-way stop in Mathiston, Mississippi, which is located in both Webster County and Choctaw County. The vehicle, a white utility van, was pulling a trailer loaded with a John Deere lawnmower. Officer Anderson turned on his siren and flashed *1226 his lights as he pulled behind the van heading west on Highway 82. As Officer Anderson later testified at trial, for the majority of the highway chase, he and the van drove in excess of ninety miles per hour. When the van’s driver, later identified as Drummer, failed to slow down or otherwise respond to his pursuit, Officer Anderson attempted to pass the van. However, each time Officer Anderson tried this maneuver, Drummer swung the trailer into the left lane to prevent Officer Anderson from pulling alongside the van.
¶ 3. Officer Anderson contacted another law enforcement officer in a nearby town. This second officer attempted to stop the van by parking his patrol car in the westbound lanes of the highway. However, Drummer managed to drive around the roadblock and continue along Highway 82. After passing Winona, Mississippi, about forty miles from Mathiston, Officer Anderson’s radio signal failed, and he called 911 for assistance. The dispatcher eventually reached law enforcement officers in Leflore County, who were able to set up a roadblock at the county line .between Carroll County and Leflore County before the van reached them.
¶4. As the van neared the roadblock, Drummer turned into a church parking lot and hit a light pole. Drummer then exited the van and, with the police pursuing him, ran through a pasture and into a utility shed. When Drummer refused to exit the utility shed, the police officers sent a police dog into the shed. Soon after the dog entered the shed, Drummer exited. An inspection of both the van and the utility shed confirmed that Drummer was the only person involved in the chase. The police’s investigation revealed that the white van, trailer, and John Deere lawnmower had been stolen from businesses in Columbus, Mississippi, which is situated in Lowndes County. The white van was stoi-len from Thompson Truck Center, and the trailer and John Deere lawnmower were both stolen from Agri-Turf, located about a mile down the road from Thompson Truck Center. Police also learned in the course of their investigation that one of Thompson Truck Center’s trucks had sustained interior damage when someone had apparently tried to start the vehicle without a key.
¶ 5. A grand jury indicted Drummer for two counts of grand larceny and one count of attempted grand larceny pursuant to Mississippi Code Annotated section 97-17-41 (Rev.2006). Prior to the start of Drummer’s trial, the State filed a motion to amend Count I of his indictment to reflect that he was a habitual offender pursuant to Mississippi Code Annotated section 99-19-81 (Rev.2007). The motion stated that Drummer had previously been convicted of the following crimes: (1) felony fleeing or eluding a law enforcement officer in a motor vehicle; and (2) the unlawful taking of a motor vehicle. The motion further provided that Drummer’s felony-fleeing conviction occurred in Webster County Circuit Court and that his conviction for the unlawful taking of a motor vehicle occurred in DeSoto County Circuit Court. Before voir dire, and outside the presence of the jury, the circuit court judge presiding over Drummer’s trial granted the State’s motion to amend the indictment.
¶ 6. During Drummer’s trial, the State called Officer Anderson, now retired, as its first witness. During a bench conference held partway through Officer Anderson’s testimony, Drummer’s attorney informed the circuit court judge that the State had just shown him some photographs not previously disclosed to the defense. In response, the State explained that it had not received a copy of the Mathiston police file prior to trial. Instead, Officer Anderson had brought the photographs with him *1227 that morning, and the State had just viewed them for the first time. The six new photographs in Officer Anderson’s file were taken at Thompson Truck Center in Columbus after the discovery of the grand larceny of the white utility van and the attempted grand larceny of the company’s truck. The photographs depicted the damage done to the chain securing Thompson Truck Center’s gate and to the steering column and ignition switch inside the company’s truck.
¶ 7. In light of the State’s delinquency in discovering and disclosing the photographs, the circuit court judge gave Drummer’s attorney an opportunity to review the photographs during a trial recess. After examining the photographs, Drummer’s attorney moved to exclude them, but he failed to request a continuance or mistrial at any point during the discussion. The circuit court judge determined that the photographs depicted content that had already been described in the indictment and the reports provided in discovery. The circuit court judge also determined that Officer Anderson had been available to both sides before trial and that there was no evidence of an attempt by either side to gain an unfair advantage. Therefore, the circuit court judge allowed the photographs into evidence. However, since neither side had seen the photographs prior to trial that morning, the circuit court judge also ordered that a copy of Officer Anderson’s file be made for both sides, and he granted both sides additional time to review the material.
¶ 8. When the trial resumed, Officer Anderson testified as to the content of several photographs that the State admitted into evidence. He stated that the photographs fairly and accurately depicted the white van, its attached trailer, and the John Deere lawnmower as they looked after the highway chase. One photograph depicted a screwdriver, which Officer Anderson testified that he saw fall from Drummer’s pocket as Drummer exited the van. Additional photographs showed the damage inflicted on the van. Officer Anderson testified that the van’s fender sustained damage and its rearview mirror shattered when the van hit the light pole. He also testified that the ignition switch on the van’s steering column had been pried off.
¶ 9. The State next called Kenny Smith as a witness. Smith worked as a service manager for Thompson Truck Center. The morning of January 2, 2009, Smith received a telephone call informing him that the Webster County Sheriffs Office had recovered a stolen van that belonged to Thompson Truck Center. When Smith arrived at work, he noticed that the chain securing the gate had been cut and that the van was missing from its usual parking spot. He also discovered that another company vehicle, a truck, had been damaged when someone apparently tried to steal it. According to Smith’s testimony, pieces of the truck’s steering column and ignition switch were found on the floorboard, as though someone had attempted to access the ignition switch without a key. Smith testified that the approximate values of the van and truck were $7,000 and $6,000, respectively.
¶ 10. The State next called Matt Hous-el, an employee of Agri-Turf, as a witness. Housel received a call the morning of January 2, 2009, from his manager, who informed him that someone had broken into the store. The manager asked Housel to go to Agri-Turf and see whether any items were missing. When Housel arrived at work, he noticed that Agri-Turfs gate was open and that the gate’s latch had been “knocked off.” Housel also noticed that a trailer and a John Deere lawnmower were missing. According to Housel’s testimony, *1228 the values of the lawnmower and the trailer were $6,000 and $700, respectively.
¶ 11. The jury found Drummer guilty of the following: Count I, the grand larceny of Agri-Turfs trailer and John Deere lawnmower; Count II, the grand larceny of Thompson Truck Center’s white utility van; and Count III, the attempted grand larceny of Thompson Truck Center’s truck. The circuit court judge sentenced Drummer to serve a term of ten years in the custody of the Mississippi Department of Corrections (MDOC) for each of the three counts charged in his indictment and to pay a fíne of $500 for each count, with the sentences in Counts I and II to run consecutively to each other, and with the sentence in Count III to run concurrently with the sentence in Count II. Drummer filed a motion for a JNOV or, in the alternative, a new trial, which the circuit court judge denied. Aggrieved by the circuit court’s judgment, Drummer appeals.
DISCUSSION
I. Whether the circuit court judge erred by giving a flight instruction to the jury.
¶ 12. In addressing this assignment of error, we acknowledge that the applicable standard of review requires that we determine whether the circuit court judge abused his discretion by giving the contested jury instruction. Newell v. State, 49 So.3d 66, 73 (¶ 20) (Miss.2010). In addition, when reviewing a jury instruction for error, we must read the jury instructions given as a whole. Id.
¶ 13. In this case, Drummer argues on appeal that the circuit court judge abused his discretion by giving the following flight instruction to the jury:
The [cjourt instructs the Q]ury that “[fjlight” is a circumstance from which guilty knowledge may be inferred. If you believe from the evidence in this case beyond a reasonable doubt that the Defendant, VANCE DRUMMER, did flee or go into hiding, such flight or hiding is to be considered in connection with all other evidence in this case. You will determine from all the facts whether such flight or hiding was from a conscious sense of guilt or whether it was caused by other things and give it such weight as you think it is entitled to in determining the guilt or innocence of the Defendant, VANCE DRUMMER.
¶ 14. With regard to flight instructions, the Mississippi Supreme Court has held that “flight is a circumstance from which an inference of guilt may be drawn and considered along with all the other facts and circumstances connected with the case.” Randolph v. State, 852 So.2d 547, 564 (¶ 56) (Miss.2002) (citation omitted). In Shumpert v. State, 935 So.2d 962, 974-75 (¶ 49) (Miss.2006) (Carlson, J., specially concurring), Justice Carlson, writing separately, summarized the law on flight as follows:
[FJlight generally is admissible as evidence of consciousness of guilt.... [A]n instruction that [the defendant’s] flight may be considered as a circumstance of guilt or guilty knowledge is appropriate only where that flight is unexplained and somehow probative of guilt or guilty knowledge. When determining whether a flight instruction is appropriate, ... two considerations are paramount: (1) only unexplained flight merits a flight instruction; and (2) flight instructions are to be given only in cases where that circumstance has considerable probative value. A flight instruction is appropriate where flight is highly probative to the facts of the particular case. Evidence of flight is inadmissible where ... there is an independent reason for flight known by the court which cannot be *1229 explained to the jury because of its prejudicial effect upon the defendant.
(Internal citations and quotation marks omitted).
¶ 15. Drummer argues on appeal that his flight from Officer Anderson was “equally probative of his alleged larceny and ... his guilt of running the stop sign in Mathiston” and that “his alleged flight was part of the offense of larceny[.]” In response, the State contends:
While Drummer’s crime of larceny may have been “in progress” at the time he ran the stop sign, as soon as he left the premises of the property owner, he had completed the crime of larceny. That is, he had taken the property and carried it away.... In other words, even if one assumes that the crime was still in progress, all elements of the completed crime were present long before Drummer began his flight. Further, [after he hit the light pole,] Drummer left the van which he had stolen ... and which he had used to pull the trailer and mower he had stolen. When he fled into the field, he was no longer “asportating” anything except himself away from law enforcement in [an] attempt to avoid the consequences of having stolen the truck, trailer[,] and mower.
¶ 16. Despite Drummer’s claim that his flight from Officer Anderson was equally probative of the larceny offenses and the felony-flight offense, the record reflects that Drummer’s larceny charges stemmed from offenses that occurred earlier in the day in Columbus, located in Lowndes County, and that were completed prior to Drummer running the stop sign. As the record shows, Officer Anderson ' saw Drummer run a four-way stop sign in Ma-thiston, located in Webster County, which is a different county from the one where the larceny offenses occurred. A high-speed chase then ensued along Highway 82 because Drummer failed to stop in response to Officer Anderson’s lights and siren.
¶ 17. “Generally, [Mississippi appellate courts] have' upheld ... flight instructions only where there was no independent reason or basis for flight.” Shaw v. State, 915 So.2d 442, 448 (¶ 21) (Miss.2005) (citations omitted). The record in this case supports the circuit court’s decision to give a flight instruction. Apart from Drummer’s failure to stop at the four-way stop sign in Mathiston, the record provides no evidence that would support an independent reason or basis for Drummer’s flight from law enforcement.
¶ 18. In addition, Drummer’s argument overlooks our case law regarding the sufficiency of evidence that will satisfy the asportation element of larceny. As Mississippi precedent recognizes, the as-portation element of larceny is satisfied by even a slight movement of another’s property after one wrongfully takes possession and control of the property. See Harbin v. State, 402 So.2d 360, 361-62 (Miss.1981); Mapp v. State, 248 Miss. 898, 904, 162 So.2d 642, 645 (1964). Therefore, based on the record, our standard of review, and applicable case law, we find no abuse of discretion in the circuit court judge’s decision to instruct the jury on Drummer’s flight.[1] This issue lacks merit.
II. Whether Drummer was prejudiced by a discovery violation.
¶ 19. “This Court’s standard of review for the admission or exclusion of evidence is abuse of discretion.” Nelson v. State, 914 So.2d 265, 267 (¶ 9) (Miss.Ct.App.2005) (citation omitted). In his second assignment of error, Drummer argues *1230 that he was prejudiced by the admission into evidence of Officer Anderson’s photographs, which the State failed to disclose prior to trial. As previously acknowledged, the six photographs depicted the damage done to the chain securing Thompson Truck Center’s gate and to the steering column and ignition switch of the company’s truck. Drummer alleges that the State’s entire case was built on the undisclosed photographs, and he asserts that he might have been inclined to accept a favorable plea agreement had he known about the photographs prior to trial.
¶20. Drummer asks this Court to reverse his convictions, arguing that the tardy disclosure amounted to trial by ambush and prevented him from fully preparing for trial. When the issue arose during Drummer’s trial, the circuit court judge provided Drummer with extra time to review the newly disclosed evidence. While Drummer raised an initial objection to the admission of the photographs into evidence, he failed to ask the circuit court for a continuance, a further delay, or a mistrial. In light of these facts, we now turn to a review and application of the relevant case law to determine whether the circuit court judge erred or whether he provided Drummer with a sufficient remedy.
¶ 21. “The purpose of discovery is to avoid unfair surprise or trial by ambush.” Brooks v. State, 748 So.2d 736, 740 (¶ 20) (Miss.1999) (citations omitted). “The essential purpose of Rule 9.04 [of the Uniform Rules of Circuit and County Court] is the elimination of trial by ambush and surprise.” Wooten v. State, 811 So.2d 355, 365 (¶ 28) (Miss.Ct.App.2001) (citation omitted). In pertinent part, Rule 9.04(1) states:
If during the course of trial, the prosecution attempts to introduce evidence which has not been timely disclosed to the defense as required by these rules, and the defense objects to the introduction for that reason, the court shall act as follows:
1. Grant the defense a reasonable opportunity to interview the newly discovered witness, to examine the newly produced documents, photographs!,] or other evidence; and
2. If, after such opportunity, the defense claims unfair surprise or undue prejudice and seeks a continuance or mistrial, the court shall, in the interest of justice and absent unusual circumstances, exclude the evidence or grant a continuance for a period of time reasonably necessary for the defense to meet the non-disclosed evidence or grant a mistrial.
3. The court shall not be required to grant either a continuance or mistrial for such a discovery violation if the prosecution withdraws its efforts to introduce such evidence.
¶ 22. The supreme court has previously stated the following:
[T]here is no hard and fast rule determining how much time is a reasonable time for the defense to assimilate unexpected and previously undisclosed evidence offered by the State. Where the State is tardy in furnishing discovery which it was obligated to disclose and after an initial objection is made by the defense, the defendant is entitled upon request to a continuance postponement of the proceedings reasonable under the circumstances. Before this procedure can be followed!,] it ⅛ incumbent upon the defendant to make a timely objection.
Wooten, 811 So.2d at 366 (¶ 29) (internal citations and quotation marks omitted).
¶23. In the present case, Drummer raised a timely initial objection to the State’s failure to disclose Officer *1231 Anderson’s file, including the photographs contained therein, prior to trial. In accordance with Rule 9.04(1), the circuit court judge then granted Drummer an opportunity to review the new photographs the State wished to admit, into evidence. The circuit court judge also offered Drummer’s attorney another full day to interview Officer Anderson and to review the file he brought to court. Despite the circuit court judge’s promise of additional time, Drummer’s attorney simply asked for another fifteen minutes to review the material. After his examination of Officer Anderson’s file, Drummer’s attorney said, “I can’t honestly say that any ... additional study [of the material] would help me.”[2] The circuit court judge then overruled Drummer’s motion to suppress the photographs contained in the file.
 ¶ 24. As reflected in the record, Drummer never requested a continuance or raised a motion for a mistrial at any point during this exchange. Drummer’s attorney specifically chose not to take advantage of the circuit court judge’s offer of additional time to review the material, and he even admitted that additional time would not necessarily help him. As our case law recognizes, “[i]t is the responsibility of defense counsel to request a continuance if unfairly surprised and, if requested, the trial court should almost certainly grant it. By failing to do so, [the defendant] waives the issue for appeal.” Id. at (¶ 30) (citation omitted). “Furthermore, a violation of Rule 9.04 is considered harmless error unless it affirmatively appears from the entire record that the violation caused a miscarriage of justice. Where the discovery violation results in the admission of evidence that is merely cumulative, the error is harmless.” Id. at (¶ 31) (citations omitted).
¶ 25. Drummer has failed to show any prejudice resulting from the admission of Officer Anderson’s photographs. As previously noted, Drummer’s attorney agreed with the circuit court judge that the photographs only depicted what was already described in the indictment and the written reports supplied during discovery. In discussing Officer Anderson’s file with the circuit court judge and the State,- Drummer’s attorney stated:
Of course, there are no ... “action photographs” ... that would depict ... the [Defendant in there. And, Your Honor, I cannot honestly tell the [c]ourt that further deliberation on my part would assist with my defense. You know, but now with this [arrest] report[,] that helps to have this report here. Now I know what the report the witness wrote [says, and I] can possibl[y] cross-examine him from that report.
¶ 26. After reviewing the record and applicable case law, we find that the circuit court provided sufficient relief to Drummer in accordance with Rule 9.04(1). We therefore find no abuse of discretion by the circuit court’s admission of the photographs into evidence. Drummer’s claim of error and prejudice resulting from the admission of the photographs lacks merit.
III. Whether the evidence was sufficient to support Drummer’s conviction for attempted grand larceny.
¶ 27. In his next assignment of error, Drummer challenges the sufficiency of the evidence supporting the conviction for Count III of his indictment, the attempted grand larceny of Thompson Truck Cen *1232 ter’s truck.[3] He also asserts that the guilty verdict for attempted grand larceny was contrary to the weight of the evidence. For the sake of clarity, we address these two arguments separately.
¶ 28. Drummer argues that the circuit court judge erred in denying his motions for a directed verdict and a JNOV as to attempted grand larceny. “The standard[s] of review for denial of a [JNOV] and a directed verdict are identical.” Wal-Mart Stores, Inc. v. Littleton, 822 So.2d 1056, 1058 (¶ 4) (Miss.Ct.App.2002) (citation omitted). Both motions challenge “the legal sufficiency of the evidence presented at trial.” Bell v. State, 910 So.2d 640, 646 (¶ 16) (Miss.Ct.App.2005) (citation omitted). This Court reviews the denial of such motions under the following standard of review:
When reviewing whether a JNOV was erroneously denied[,] we look to the sufficiency of the evidence, and it is viewed and tested in a light most favorable to the State. Wfiien reviewing a denial of a JNOV[,] the prosecution is given the benefit of all favorable inferences that may be reasonably drawn from the evidence, and all credible evidence consistent with the defendant’s guilt must be accepted as true. This Court may only reverse a denial of [a] JNOV when[,] with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.
Price v. State, 892 So.2d 294, 297 (¶ 12) (Miss.Ct.App.2004) (internal citations and quotation marks omitted).
¶ 29. Drummer was convicted of Count III of his indictment, the attempted grand larceny of Thompson Truck Center’s truck. The circuit court judge gave the following jury instruction on attempted grand larceny:
The [c]ourt instructs the [j]ury that if you find from the evidence in this case beyond a reasonable doubt that the Defendant, VANCE DRUMMER, ... on or about January 2, 2009, did then and there unlawfully, willfully!,] and felo-niously, attempt to take, steal, and carry away, the property of Thompson Machinery to wit: one (1) 2000 [w]hite Chevy [p]iekup [t]ruck ... having a total value in excess of $500.00, and in furtherance thereof, did the following overt acts:
1) by going to Thompson Machinery;
2) by cutting the wire on the surrounding fence;
3) by working on the ignition;
but failed therein, then you shall find the Defendant guilty of [attempted [g]rand [l]arceny as charged in Count 3. If the State has failed to prove any of the above elements beyond a reasonable doubt and to the exclusion of every reasonable hypothesis consistent with innocence, then you shall find the Defendant not guilty.
¶ 30. At Drummer’s trial, the jury heard Officer Anderson’s testimony about his high-speed chase with the driver of a white van on the morning of January 2, 2009. When the van finally crashed, the driver exited the van and ran into a nearby utility shed. Drummer was the only person to eventually emerge from the shed. A search by police confirmed that Drummer was the only person in the vicinity of either the van or the utility shed.
*1233 ¶ 31. Upon learning that the van belonged to Thompson Truck Center, police telephoned Smith, the company’s service manager. Smith then went to work and discovered that the chain securing the company’s gate had been cut. Upon further inspection, Smith discovered that someone had tried to steal a company truck, which he valued at approximately $6,000. According to Smith’s testimony, he found pieces of the truck’s steering column and ignition switch on the floorboard, as though someone had attempted to start the truck without a key. Officer Anderson testified that police found similar damage to the ignition switch of Thompson Truck Center’s stolen van, which had been pried from the van’s steering column. Officer Anderson also testified that the police found and photographed a screwdriver at the crash site, which they believed Drummer used to start the van. According to Officer Anderson’s testimony, he saw the screwdriver fall from Drummer’s pocket as Drummer exited the van and ran toward the utility shed.
¶ 32. Based on the evidence presented at trial, we find no error in the circuit court’s denial of Drummer’s motions for a directed verdict and a JNOV. Considering the evidence in the light most favorable to the State, and accepting as true all credible evidence consistent with Drummer’s guilt, we find sufficient evidence in the record to support Drummer’s conviction for attempted grand larceny. See Pnce, 892 So.2d at 297 (¶ 12). Therefore, this issue lacks merit.
IV. Whether the guilty verdict for attempted grand larceny was contrary to the weight of the evidence.
¶ 33.' Drummer also contends that the circuit court judge erred by denying his motion for a new trial because the guilty verdict for attempted grand larceny was contrary to the weight of the evidence. “When reviewing a denial of a motion for a new trial, all evidence in favor of the State is accepted as true, and we will reverse only for abuse of discretion.” Price, 892 So.2d at 297 (¶ 11) (citation omitted). In addition, “we must review the evidence in the light most favorable to sustaining the verdict and may reverse the [circuit] court only if we conclude that a manifest injustice has occurred.” Stevenson v. State, 738 So.2d 1248, 1252 (¶ 17) (Miss.Ct.App.1999) (citation omitted).
¶ 34. In light of the evidence previously summarized, we find no abuse of discretion in the circuit court’s denial of Drummer’s motion for a new trial. Accepting as true all evidence in favor of the State, and reviewing the evidence in the light most favorable to the verdict, we cannot find that the verdict was so contrary to the weight of the evidence that a manifest injustice occurred. See Price, 892 So.2d at 297 (¶ 11); Stevenson, 738 So.2d at 1252 (¶ 17). Therefore, this issue also lacks merit.
V. Whether the circuit court judge properly sentenced Drummer as a habitual offender.
¶ 35. In his final assignment of error, Drummer challenges his habitual-offender status.[4] This issue addresses *1234 whether the circuit court properly sentenced Drummer as a habitual offender since Drummer’s larceny offenses and his predicate offense of felony flight occurred on the same day, albeit at different times, in different counties, with different victims, with different criminal intents, and with different elements of proof. See Rushing v. State, 461 So.2d 710, 713 (Miss.1984) (finding that the defendant was correctly sentenced as a habitual offender where his prior convictions, though occurring on the same date, arose out of separate incidents).[5] As this Court has previously held, the only date requirement regarding the enhancing conviction is that “the enhancing conviction precede the new conviction.” Foxworth v. State, 94 So.3d 1178, 1182 (¶ 10) (Miss.Ct.App.2011) (citing Sims v. State, 775 So.2d 1291, 1293 (¶ 13) (Miss.Ct.App.2000)).[6]
¶ 36. Prior to Drummer’s trial, the circuit court judge granted the State’s motion to amend Count I of Drummer’s indictment to reflect his status as a habitual offender. The two predicate convictions offered in support of the State’s motion included Drummer’s felony-flight conviction from Officer Anderson in Webster County and an unrelated conviction for the unlawful taking of a motor vehicle in De-Soto County. For both predicate convictions, Drummer was sentenced to a term of one year or more in the custody of MDOC.[7]
¶ 37. In attacking his habitual-offender status, Drummer does not deny the prior convictions that the State used as predicate offenses. However, he contends that his felony flight fails as a predicate offense in the instant case because it occurred on the same day as his grand-larceny offenses. According to Drummer’s argument, the felony-flight conviction grew out of the asportation element of Count I of his indictment, the grand larceny of Agri-Turfs trailer and lawnmower. Arguing that his conduct constituting felony flight was actually a continuation of his alleged larceny, Drummer asserts that, “[e]ven though chargeable as another offense, the felony flight was not a separate crime for purposes of habitual sentencing.”
¶ 38. In response, the State argues that Drummer’s felony flight from Officer Anderson in Webster County amounted to a separate crime from the offense of grand larceny of Agri-Turfs lawnmower and trailer in Lowndes County. According to the State’s argument:
The stealing of the lawnmower and trailer was complete once the equipment was *1235 taken and removed from Agri-Turf in Lowndes County. The felony fleeing commenced when Drummer ran the stop sign in Mathiston and failed to stop after Officer Anderson signaled him to do so with the flashing blue lights and siren.
¶ 39. Relevant to our analysis, section 99-19-81 provides:
Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, shall be sentenced to the maximum term of imprisonment prescribed for such felony, and such sentence shall not be reduced or suspended nor shall such person be eligible' for parole or probation.
(Emphasis added).
¶ 40. In addressing Drummer’s argument that his felony flight constituted part of the asportation element of his grand-larceny offense, we now turn to a review of our precedent. In Bergeron v. State, 60 So.3d 212, 216 (¶¶ 10-11) (Miss.Ct.App.2011), this Court focused on whether the defendant’s two offenses arose from a common nucleus of operative facts and shared the same illicit goals or criminal intent. We held in Bergeron that the defendant’s two prior convictions arose from the same incident and therefore failed to support his habitual-offender status. Id. at (¶ 11). Bergeron broke into a car dealer’s office, stole a set of keys, and used the keys to take a car from the dealership. Id. He argued on appeal that his two predicate offenses, burglary and theft by taking, had but one goal — to steal a car. Id. at (¶ 10).
¶ 41. In our analysis of Bergeron’s predicate offenses, this Court considered the following language from Otis v. State, 853 So.2d 856, 862 (¶16) (Miss.Ct.App.2003):
It is understandable why two crimes originating out of the same nucleus of operative facts should be counted as one crime for evaluating whether one should receive an enhanced penalty for his continual involvement in criminal activity. If the purpose of the statute is to deter subsequent criminal activity, it would be patently unfair to count multiple crimes — arising out of a common nucleus of operative facts and committed at the same time by an individual during one foray into criminal activity — as separate crimes because neither of the multiple crimes constitutes subsequent involvement in criminal activity. Such an interpretation is consistent with the laudable purpose of the statute: to stiffen the penalty for repeat offenders, not for current offenders who commit several crimes during their one foray into criminal activity.
Bergeron, 60 So.3d at 216 (¶ 10).
¶ 42. As acknowledged, in deciding whether to find Bergeron’s predicate conviction and his current conviction as one crime for application of habitual-offender status, this Court considered whether the crimes arose out of a common nucleus of operative fact. Id. In so doing, we considered whether the defendant’s offenses required different criminal intents and whether different victims existed. Id. at (¶ 11). As we recognized in Bergeron, the supreme court has previously held that “a prior offense may be considered under the statute even if it occurred on the same day as the instant offense as long as the two charges arose from ‘separate incidents.’ ” Id. at 215 (¶ 8) (citation omitted).
¶43. We also noted in Bergeron that the supreme court thoroughly discussed *1236 the same issue in Pittman v. State, 570 So.2d 1205 (Miss.1990). Id. In discussing Pittman, we stated the following:
In Pittman, the defendant was convicted of burglarizing a store. He was sentenced as a habitual offender as he had two prior convictions: burglary of Dotson Elementary School and grand larceny from Wilson Elementary School. These charges arose from events that occurred on the same night, and both schools were in close proximity as they were connected to one another by a common walkway and enclosed by a single, all-inclusive fence. The supreme court found that the convictions were separate incidents and upheld the defendant’s sentence as a habitual offender.
In its analysis, the Pittman court provided guidance for determining whether incidents could be considered separate:
Before such behavior should be labeled habitual, it would seem that the events should be sufficiently separate that the offender’s criminal passions may have cooled so that he has time to reflect, and if after such an interval the individual forms and actualizes a new criminal design, and then does so a third time, he should be met with all of the power of the public force. Conversely, two offenses committed in rapid succession do not suggest the same repetitiveness of criminal design such that the offender may be thought predictably habitual thereafter, or deserving of severe sanction.
However, Bergeron asserts that his case is actually more analogous to the following hypothetical situation posed by the Pittman court:
No doubt, if Bobbie Lee Pittman broke and entered one room in the Wilson Elementary School and, finding nothing of value, then moved to another room in the same school and thereafter stole the three television sets from that room, we would consider the union of these acts sufficient that they would constitute but a lone incident under the statute. The record before us, however, reflects that the Dotson Elementary School and the Wilson Elementary School are separate schools, notwithstanding their proximity and common use of the auditorium and cafeteria.
Bergeron, 60 So.3d at 215 (¶¶ 8-9) (internal citations omitted).
¶ 44. Finding that the offenses in Ber-geron arose from the same nucleus of operative fact, we held that Bergeron’s crimes of burglary and theft by taking had “only one victim[, the car dealership,] and one intent, to steal a car.” Id. at 216 (¶ 11). In contrast with Bergeron, however, the supreme court found “[i]n Garrison v. State, 950 So.2d 990, 995 (¶ 19) (Miss.2006), ... that the defendant’s prior convictions constituted two separate felonies as there were ‘two separate victims and two types of criminal intent.’ ” Bergeron, 60 So.3d at 216 (¶ 11) (citing Davis v. State, 850 So.2d 176, 179-80 (¶¶ 13-15) (Miss.Ct.App.2003), for the “finding that the defendant’s convictions, although committed in a series of events, were separate incidents as they involved two different victims and the second crime occurred at ‘some point later in time and location had nothing to do with the first case’ ”).
¶ 45. As in Garrison and Davis, the circuit court determined in the present case that Drummer’s predicate offense of felony flight arose from a distinct set of facts from his earlier larceny offenses, thereby constituting a completely separate offense from the larceny offenses. Our review also reflects that, although Drummer’s felony-flight and larceny offenses occurred on the same date, the offenses failed to arise from a common nucleus of *1237 operative fact. As reflected in the record, the crimes occurred at different times of day, occurred in different cities and counties, required different criminal intents, involved different victims, and required different elements of proof.
¶ 46. Our review of the record first shows that Drummer’s crimes occurred at different times of the day and in different cities and counties. As previously noted, Drummer’s larceny offenses occurred in Columbus, located in Lowndes County, and his conduct constituting the offense of felony flight did not begin until he ran a four-way stop sign in Mathiston, located in Webster County. Moreover, Officer Anderson only began pursuing Drummer after Drummer ran the stop sign. Instead of stopping in response to Officer Anderson’s police lights and siren, Drummer led Officer Anderson on a high-speed chase. He then continued to flee from Officer Anderson until reaching the police blockade at the county line of Leflore County, where he finally crashed into a light pole and tried to hide inside a shed.
¶ 47. We also find from our review of the record that Drummer’s predicate offense of felony flight involved different victims, a different criminal intent, and a different illicit goal from his larceny offenses. While Officer Anderson and the public were the victims of Drummer’s felony flight, Agri-Turf and Thomson Truck Center constituted the victims of the grand-larceny offenses charged in Counts I and II of his indictment. In addition, Drummer’s larceny offenses required the specific intent to permanently deprive Agri-Turf and Thompson Truck Center of their property,[8] whereas his felony flight involved an intent to flee from law enforcement.
¶ 48. We further find that Drummer’s crimes required different elements of proof. As previously noted, Drummer argues on appeal that his felony flight grew out of the asportation element of his larceny offenses. However, as reflected in the following discussion, application of relevant case law shows that the asportation element of Drummer’s larceny offenses was completed in Lowndes County before Drummer ran the stop sign in Webster County.[9]
¶ 49. Applying our precedent, we find that the evidence in the record shows that Drummer completed the offense of grand larceny upon his taking of Agri-Turfs property with the specific intent to wholly and permanently deprive the company of its property. See Catling v. State, 45 So.3d 295, 298 (¶ 10) (Miss.Ct.App.2010). Mississippi case law establishes that, to constitute the asportation of someone else’s property, the “carrying away” movement need not be substantial to be sufficient. Mapp, 248 Miss, at 904, 162 So.2d at 645. “To remove [the goods] with the requisite felonious intent from one part of the premises to another, or from the spot or house where they were found, or even from one place to another in the same room, is a sufficient asportation.” Id. For example, in Harbin the supreme court found the evidence showing that the defendants hooked a chain to the victim’s car and towed the vehicle a mere three feet before abandoning the attempt to be sufficient to support their grand-larceny conviction. Harbin, 402 So.2d at 361-62.
¶ 50. As explained in Harbin:
*1238 There is a caption when the defendant takes possession; he takes possession when he exercises dominion and control over the property. There is an asportation when he carries away the property; any carrying away movement, however slight, even though it takes but a moment, is sufficient. Given an asportation, a larceny is committed even if the defendant for whatever reason abandons the property, or even if, because he is detected, his purpose in carrying away the property is frustrated.
Id. (citation omitted).
¶ 51. In further applying our precedent to the present case, we find that a “caption” and “possession” occurred when Drummer exercised dominion and control over Agri-Turfs trailer and lawnmower.[10] An “asportation” occurred upon any movement of the stolen property by Drummer.[11] This element was satisfied upon even the slightest movement of the property by Drummer, and as the record reflects, Drummer not only removed the property from Agri-Turfs premises but also from Lowndes County completely. Thus, Drummer successfully completed all the requisite elements of his grand-larceny offense before engaging in the criminal conduct of felony flight later that day in another city and county.
¶ 52. Drummer’s argument that his felony flight grew out of the asportation element of his larceny offenses overlooks the applicable case law establishing that even slight movement is sufficient for the completion of asportation. His argument also fails to acknowledge the continuing nature of a larceny offense even though commission of the crime is complete. “Our supreme court has long held that ‘larceny is a continuous offense and is being committed at all times during which the thief deprives the owner of the stolen property of its possession.’ ” Walker v. State, 96 So.3d 43, 46 (¶ 12) (Miss.Ct.App.2012) (citing Walker v. State, 188 Miss. 177, 183, 189 So. 804, 806 (1939)).
¶ 53. Upon review, we find that Drummer’s felony-flight offense and his grand-larceny convictions in Counts I and II of his indictment constituted separate crimes arising from separate incidents. The record and our case law support the circuit court’s use of the predicate felony-flight offense to enhance Drummer’s sentence for the grand-larceny conviction. We therefore affirm the circuit court’s decision to sentence Drummer as a habitual offender. This issue lacks merit.
¶ 54. THE JUDGMENT OF THE LOWNDES COUNTY CIRCUIT COURT OF CONVICTION OF COUNTS I AND II, GRAND LARCENY, AND COUNT III, ATTEMPTED GRAND LARCENY, AND SENTENCE AS A HABITUAL OFFENDER OF TEN YEARS AND TO PAY A $500 FINE FOR EACH COUNT, WITH THE SENTENCE IN COUNT I TO RUN CONSECUTIVELY TO THE SENTENCE IN COUNT II, AND WITH THE SENTENCE IN COUNT III TO RUN CONCURRENTLY WITH THE SENTENCE IN COUNT II, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LOWNDES COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, ROBERTS AND FAIR, JJ., CONCUR. BARNES AND MAXWELL, JJ., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. *1239 JAMES, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION.

. See Newell, 49 So.3d at 73 (¶ 20).

. Drummer’s attorney also admitted to the circuit court judge that he knew Officer Anderson planned to testify but never attempted to contact him.

. ' As previously noted, the jury also found Drummer guilty of Counts I and II in his indictment. Count I charged Drummer with the grand larceny of Agri-Turf’s trailer and lawnmower, and Count II charged him with the grand larceny of Thompson Truck Center’s van.

. As our case law recognizes, “[w]e apply a highly deferential standard of review for sentencing matters, leaving the imposition of the sentence to the [circuit court] judge’s discretion. Generally, if the sentence does not exceed the statutory maximum, it will not be disturbed on appeal.” Perryman v. State, 120 So.3d 1048, 1052 (¶ 10) (Miss.Ct.App.2013) (internal citations omitted). However, where sentencing occurs under section 99-19-81, Mississippi’s habitual-offender statute, sentencing is not discretionary. See Shields v. *1234 State, 78 So.3d 381, 384 (¶ 8) (Miss.Ct.App.2012). “Rather, if a defendant is a repeat offender falling within the provisions of section 99-19-81, the trial judge has no alternative but to sentence him under said statute.” Id. (citation and internal quotation marks omitted).

.In Crawley v. State, 423 So.2d 128, 129 (Miss.1982), the supreme court stated that, "[ajlthough one of the [defendant’s] previous offenses occurred on the same day as the one included in the present case, it was separately brought and arose out of a separate incident which occurred at a different time of day.” Therefore, the Crawley court found that Mississippi Code Annotated section 99-19-81 (Supp.1982) properly applied. Id. See also White v. State, 571 So.2d 956, 960 (Miss.1990) (acknowledging that two burglaries occurring on the same date received separate sentences and constituted separate convictions).

. See also Crawley, 423 So.2d at 128-29 (finding no requirement that the predicate conviction must occur prior to the date on which the crime presently being tried was committed). Cf. United States v. Gipson, 46 F.3d 472, 475-76 (5th Cir.1995) (discussing the interpretation and application of the federal career-offender enhancement statute).

. See Sims, 775 So.2d at 1293 (¶¶ 12-13); Miss.Code Ann. § 99-19-81; URCCC 11.03(1).

. See Catling v. State, 45 So.3d 295, 298 (¶ 10) (Miss.Ct.App.2010) ("Grand larceny requires evidence of specific intent to deprive the owner of his property wholly and permanently.” (citation omitted)).

. See Harbin, 402 So.2d at 361-62; Pollard v. State, 932 So.2d 82, 86 (¶¶ 8-9) (Miss.Ct.App.2006).

. See Harbin, 402 So.2d at 361-62.

. Id.